Chief Justice Robertson
delivered the opinionof the court.
The county court having overruled an application by the trustees of New-Port for a ferry, from the town of New-Port across the Ohio river to. Cincinnati, they have appealed to this court.
New-Port was established on the land of James Taylor, sen. by an act of assembly, approved December 14th, 1795. The preamble, and so-much,.of the act as can affect the present controversy, are in the following language:
i4Whereas, it is represented to-the present general assembly, that one hundred and eighty acres of land, the property of James Taylor, in the county of Campbell, has been laid off into convenient lots and-sfreets by the said James Taylor, for the purpose of a town, and distinguished by the name of New- *135 'Port, and it is judged expedient to vest the said land, in trustees, and establish the town.”
Section 1. Be it therefore enacted by the “general assembly, that the land comprehending the said .town, agreeably to a plat made by John Roberts, he, and the same is hereby vested in Thomas Kennedy,” (and •others,) “who are hereby appointed trustees for the same, except such parts as are hereafter excepted.”
Section 7. And be it further enacted, that “stoA part nf said- town as lies between the lots and river Ohio, and Licking, as will appear by a reference to the said plat, shall forever remain, for the use and benefit of the said town, for a common: reserving to-the sáid James Taylor, and his heirs and assigns, every advantage and privilege which he has not disposed of or which he would, by law, be entitled <o.”
The streets and lots, as exhibited by the plat referred to in the ac* of assembly, do not extend to either the river Ohio or Licking, a'nd contain, as we infer from the testimony, one hundred and eighty acres. The distance from the lots to the Ohio river, varies, according to the inflexions in the line boufid-ing the margin of the river at '■'•high water markf from five to ten poles; and the distance from high to low-water mark, varies from seventeen to two hundred yards.
The area between the two lots and the Ohio, was designated on the plat as an '•'•esplanade^
Prior to the establishment of the town, a ferry had been granted by the county, court of Mason, (which county then included the land,) to James Taylor, sen. across the Obio to Cincinnati, and which ferry has been in operation generally, ever since its establishment.
In 1799, James Taylor, sen; convoyed to James Tavlor, jr. all his right to the land between the lots in New-Port, and the rivers Ohio and Licking, and also, his right to the ferry and to all incidental ferry privileges.
In 1807, the county court of Campbell, recognizing the legal title of James Taylor, jr. to the ground on the river Ohio, transferred to hipi by its order, the *136 ferry privilege which had been granted to the former proprietor, (and his vendor,) James Taylor, sen. and re-established the ferry in the name of James Taylor, jr. who executed bond conformably to law, and has enjoyed the exclusive ferry privilege at Now-Port ever since. He opposed the applir ition of the appellants in Uie county court, and resists-their claim in tais court, insisting that the fee in the land on the river, is no¡ in them, but in him; and that if it be in them, it has been circumscribed so as barely to secure enjoyment of the common, and that all other privileges not inconsistent with tire commonable rights, have been reserved to him.
Order of county court, grantins; Ir-r-ry, appearing correct on its face, conclusive of.right to land arid not to be inci-denta'ly as..sailed.
' The appellants, of course, contend that the exclusive and absolute title is in them, and that there has not been secured to the appellee any exclusive, ferry privilege, but, that they have a right to a ferry, incident to their title in the land on the river.
If does not certainly appear, whether or not, the public interest requires tire establishment of another ferry; but, as the parties have waived that question, we,will consider the case on the ground on which they liave placed it.
If the appellee is not, and never was, the owner of the land on the river, nevertheless, the order establishing his ferry, must now be deemed valid; because it shows that the county court‘decided that he was then the proprietor of the land, and was, therefore, entitled to the ferry privilege; and the judgment. of the county court, thus appearing proper on its face, cannot be incidentally called in question.
Nor can the proximity of the proposed ferry, to that of the appellee, present any legal barrier to the right of the appellants, if otherwise, that right be sustainable; for flv statute of 1819. (I Dig. 593,) as enrolled, excepts from its inhibition, ferries from land where there is a town, or where an impassable river intervenes.
The sole question to he considered, is, therefore, whether the appellants have shown that Ihev possess such an interest in the ground on the Ohio river, and between that river and the'lots in N>wt Port, as will entitle them to tire grant of a ferry across the river *137 le Cincinnati. This question may be resolved into two subordinate propositions: •
The grant of aright of co™rann,clot)s ]y divestgrantor of right.of ‘erry-
'1st. Have the appellants any interest, as trustees of New-Part,-in the ground denominated a common?
2d. If they have any interest, what are its 'nature, extent and effect?
1st. None of the appellants are grantees in the act which established. .town of New-Port; and that act did not vest ait» e -in the successors of the trustees to whom i«L nted the land for the -benefit of the town. Ui^PjS therefore some subsequent statute has transferred to their successors all the rights vested in the original trustees, or unless, as the representatives of the town of New-Port, the appellants have such a beneficial interest as should be .considered equivalent to the legal title so far as the ferry franchise may be concerned, the judgment to the county courtis right, even if such a title m fee of the ground called a common had been vested in the trustees designated by the act of 1795, as would entitle them to the grant of a ferry.
But as a decision of this point is not necessary, unless the original trustees held such an interest as would have entitled them to a ferry, and as it is more important to the parties to have the merits of the conflicting claims of the appellee, and of the town of New-Port settled, than to have this particular case disposed of on any other ground, we shall not now further examine the first proposition, but shall proceed to consider the second, by disposing of which, all controversy as to title, may be terminated.
2d. Either the legal title (o the ground designated as an esplanade, was vested in the trustees by the act of 1795, for the purpose of securing its use as a common-, for the benefit of the town, or the right Of common merely, w.as granted to them intrust for the town, the fee still remaining in the proprietor. And it is not material -to the present controversy, which of these effects shall result from a proper construction of the act of assembly. The case,-thus stated, •presents to the appellants a dilemma. If the fee in the land, be not in the grantees mentioned in the act, ¿¡or in the appellants as .their successors. Ihev have *138 no right to a ferry which is incidental to the title to the land.
J'ue simple, Joes not pass by grant of '■ommon.
Act of 1795, establishing Hew Port, construed.
If the fee be in the original trustees, or in the appellants, nevertheless, it was vested for a single purpose, viz: for securing a common to the town, and the ordinary incident to the title, viz: the ferry privilege, has, according to any reasonable and effectual construction of the statute of “ 15, been detached from the title,- and reserved , former proprietor who yet retains all the rig* ' /aid privileges, the exercise or enjoyment of wht^Bmay be consistent with the right of common secuml to the town.
We are inclined to the opinion, that the proprietor was not divested by the art of 1795, of the fee in the ground appropriated as a common. Such a divestiture of title was not necessary for securing thevend contemplated by the legislature, or by the parties to the compact which tiie act of'assembly was intended so effectuate.
When a right of common is granted, it is not necessary that the fee simple title should accompany it, and if the fee should be vested in the same persons to whom the right of common be granted, the grant would be nugatory and superrogatory. It is true, thal in this case, the common was secured to the use and for the benefit, not of the trustees, but of the people of the town, and the absolute fée in the land, if it passed at all by the act, was .vested in the trustees. But not only was such a deposit of the legal title unnecessary, but the whole tenor of the act of assembly tends, in our opinion, to show' that the legislature did not intend to make it.
The right of common, is as effectually secured to the town by permitting the fee to remain in the proprietor, as it. could have been by transferring it from him to the trustees. In either case, the title would ■be held subject to the right of common and quoad hoc,. the holderof the tille would be a trustee for the benefit of the town. But, independently of this consideration, the provisions of the act, fairly and Consistently, and effectually interpreted, strongly tend to the conclusion, that the fee was not divested by the. act of assembly. . The preamble declares, that one hundred and eighty acres of land had been laid off *139 fora town. These one hundred and eighty acres did not include the common which had not been sur--veyed. The first section vested in trustees “the (and comprehending the said town” according to the plat, and .declared that they shall be “trustees for the same,” except such parts as are hereafter excepted.” The piat .exhibited the ground between the lots and the river-as a common.
The 7th section declared “that such part of the town,” should .be'a common, reserving to Hie proprietor, “every advantage and privilege which he has not disposed of,” &c. Now, although the common had not been surveyed, and did not constitute a part of the one hundred and eighty acres, nevertheless, it should, we think, be considered as forming a-part of the town. This we infer from the phraseology of the 7th section. But it does not follow, as a necessary consequence, that the legal title to the ground set apart as a common, was vested in the trustees, or taken from the proprietor. Such a construction of of the "act would, it seems, to us, be inconsistent with the reservation in the 7th section, and would, render the exception in the 1st section, inoperative or nearly so.
The expressions, “every advantage and privilege which he has not disposed of,” cannot, with propiiety, be restricted to the ferry which had been granted to him. For such an individual purpose, the language would be inappropriate and uselessly comprehensive.
The words used by the legislature, import more than any one advantage or privilege"; they necessarily imply generality, or plurality at least. But, moreover, the words, “which he has not disposed of,” must be considered1 as referring to. the terms proposed by the proprietor, and which were ratified and legalized by the statute.
These terms did’ not propose to vest the fee ’simple title in the trustees to any portion of the land, except so much as had been laid off in lots, streets and alleys; but barely offered the use of the land between the lots and the two rivers for a- common. When, therefore, the town was established according *140 to those terms, the proprietor had not “disposed of^ the-fee in the land between the lots and the rivers, but had disposed only of the right of common there- and, therefore, the act declared, that this lane! shool‘d“forever remain for the ase and benefit of the the said town for a common,” and then, through abundant caution, reserved all rights which had not been “disposed of,” which we interpret to mean, all' rights which w.ill not be inconsistent with the right of common which had been granted, Then, according to this construction, the right of common was secured-to the town and the fee, and alt other rights compatible with the grant of common were, retained by the proprietor. This.inference is, in some degree, fortified by extraneous farts. Hubbard Taylor, who &!SMurvcyed and laid off the town in pursuance of the proprietor’s instructions, swore that the reason why neither the .lots nor streets were extended lo> either of the rivers, and why the interjacent ground was designated as a common, was, because the proprietor intended to retain the monopoly of the ferry and other valuable privileges incident to his title, but was desirous that the town should have a right to use the open ground' as a common. And it appears, not only that the proprietor conveyed to the appellee, in-1799, the fee in the land between the town lots and the rivers, and all the- rights and privileges which, as he supposed, had been reserved by the act of 1795,, but that the appellee has ever since been permitted without disturbance to enjoy the exclusive ferry privilege and to claim and use the land without question as to his right. Tnese facts, strengthened, as they are, by the lapse of time, tend, persuasively to corroborate the construction which wo have given to the act of 1795. Moreover, the exception in the 1st section should have some effect in sustaining this construction. If that exception does, not apply to the common, it can have no other application than to lots which, had been conveyed, by the proprietor. We believe that it applies as well to the common, as to those lots, and that its application, to the common is even more direct and necessary than to the lots,
Oonsiraction' of legislative cdby extrinsic evidence,
But if the fee passed by the act of 1795., to the trustees, the incidental ferry privilege- did not go *141 with it, but was reserved to the former proprietor by the 7th sectioA. If the proprietor intende d to pmrf with the legal title to the ground set apart fora corn-mon, he intended to part with it only so far as he necessary for the complete security of the right common to the town, and intended to retain his cedent rights, so far as they would not conflict with the perfect enjoyment of the common hv the town, ’ . '
of ^1" cantor of no right which is not essential to the right of common,
This purpose, the legislature had the power to of-feet; and they have, in our opinion, effected it by’ the reservation in the 7th section, even if the fee passed to the trustees. The ground which was designated as a common, was granted, if granted at all, to the trustees for the single purpose of being used as a common. It was represented on the plat as a common; the proprietor offered it as a common. It is but reasonable then,to infey, that the proprietor never intended to yield any right, which was not incompatible with the right of common, which he proposed to give to the town, and that the legislature intended to consummate his contract with the purchasers of lots and to secure to him all that he had not proposed to give up. He proposed to give ground for a common, but to reserve all rights which might he consistent with the right of common. His exclusive right to any ferry which may be established from New Port to Cincinnati, is not inconsistent with the right of common secured to the people of New-Port. A fet-.ry is an exclusive franchise, it is not incident to a right of common. The proprietor had a right to propose such terms as he preferred. The act of 1795, only confirmed his proposition. His intention seems to have been to retain the exclusive ferrv pri-viledge. It was the duty of the legislature therefore, to secure it lo him; and we cannot understand the act of 1795, otherwise, than as intending lo secure it to him;, no other construction of it would give practical, consistent and reasonable operation to all its provisions.
Although a vendor, after conveying his title lo land, could not, by his deed, effectually reserve to himself a ferry right, which is an incident to the title to the land, yet such a reservation may be made by buy. ;Wh a reservation was, we think, made by the act, *142 of 1795, if it vested the fee in the trustees. And this inference is strengthened by the tacit and prac-tieai construction, for along series of yea is, of all parties concerned.
Richardson and Criliencleh, for appellants;. Hoggin, Mills and Brown and Wickliffe and Woolley, for ap-pellees.
Wherefore, the order of the county court is affirmed.